FERDINANDO PETRARCA *et al. vs.* LILLIAN McLAUGHLIN.

DECEMBER 22, 1948.

PRESENT:   Flynn, C. J., Capotosto, Baker and O'Connell, JJ.

FLYNN, C. J. This is an action of trespass and eject-ment. After a trial in the superior court a jury returned a verdict for the plaintiffs and the trial justice subsequently denied the defendant's motion for a new trial. The case is here on defendant's exception to that decision.

The transcript discloses, among others, the following facts. Plaintiffs Angelo L. Tucci and his sister Laura M. Petrarca, wife of Ferdinando Petrarca, the other plaintiff, became the legal owners of three houses on premises located at 58, 58½ and 60 Carpenter street in the city of Provi-dence. Each house was occupied by a different tenant.

Defendant was a tenant from month to month of the premises at 60 Carpenter street and occupied the entire first or basement floor as her own living apartment. Like the tenants of the other houses, against whom similar proceedings apparently had been commenced or completed, she also conducted a business of renting rooms. In her case there were eighteen rooms located on the second, third and fourth floors and she paid a rental of $75 per month to plaintiffs.

Plaintiff Tucci applied to the federal office of price ad-ministration, hereinafter called OPA, under the prevailing regulations of the Emergency Price Control Act of 1942,

as amended, for permission to bring eviction proceedings for possession of the premises for the purpose of self occupancy. This application was granted and notice thereof was given to and received by the defendant. In accordance with such permission, a notice to vacate the house as provided by general laws 1938, chapter 453, §4, was given by the plaintiffs to the defendant, and when she did not surrender possession accordingly the present action in trespass and ejectment was commenced in the district court. From an adverse decision the defendant took an appeal to the superior court, where a jury returned a verdict for the plaintiffs. Thereafter the trial justice denied the defendant's motion for a new trial, which was based upon the usual grounds and also upon alleged newly discovered evidence.

The defendant has neither briefed nor argued the ground of newly discovered evidence and we need not consider it. She contends merely that the trial justice erred in denying her motion for a new trial on the grounds that the verdict is against the law; that it is against the evidence and weight thereof; and that the trial justice erred in ordering the jury to continue their deliberations after the foreman had advised him that they were in disagreement and that one of the lady jurors was ill.

Under the first contention it is argued that the burden was on the plaintiffs, under the Housing and Rent Act of 1947, sec. 209 (a) (2), then in effect, to establish that "the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations" and that as a matter of law the plaintiffs did not sustain that burden.

This contention, if we understand it correctly, is substantially that the verdict is contrary to law. In that connection the trial justice pointed out to the jury the requirement of the rent regulation above referred to and specifically instructed them as follows: "If you think the plaintiff intends to live there—if you think he has proved

4

that by a fair preponderance of the evidence, your verdict should be for the plaintiff. If you think he does not—if you think on all the circumstances that the plaintiff has not proven to you his intention to use this tenement for his own personal occupancy then your verdict should be for the defendant."

No objection was taken to this instruction, which also had been repeated in other words elsewhere in the charge, and it therefore became the law of the case. It is clear from the charge as a whole that the jury received adequate instructions as to the plaintiffs' burden of proof. The evidence on this issue was conflicting and therefore created a material issue of fact for determination by the jury under the above instruction. If the plaintiffs' testimony is believed, it cannot be said that the verdict is contrary to the law of the case as thus given to the jury.

Defendant next contends that as a matter of fact the preponderance of the evidence shows that plaintiff Tucci did not seek possession in good faith for self occupancy, and therefore the verdict is against the evidence and the weight thereof. There is testimony, if believed, to the effect that the plaintiffs were dissatisfied with the amount of rent and were attempting secretly to exact more than the OPA regulation would permit by having the defendant indulge in a so-called "under the table" transaction of paying $100 and accepting a receipt for $75; and that plaintiffs were interested in obtaining possession of this house for business purposes and not in good faith for immediate and personal use as housing accommodations for plaintiff Tucci. There are also some facts which may tend to weaken the credibility of plaintiff Tucci's further explanation that he desired possession in order to live near his mother.

On the other hand the plaintiffs categorically denied that any of them suggested that the defendant pay the alleged "under the table" monthly rental. They asserted that such suggestion came from the defendant and was refused

by them. They also testified without contradiction that one of the plaintiffs had actually taken up housing accommodations for herself in one of the three houses and they insisted positively that plaintiff. Tucci intended in good faith immediately and personally to live in the apartment now occupied by the defendant, regardless of what might or could happen to the other rented rooms. Contrary to defendant's assertion in her brief, we do not find that plaintiff Tucci admitted he wanted this house solely for the purpose of conducting a rooming house or other business.

From this conflicting evidence reasonable minds might draw different conclusions, depending upon whose testimony is believed. The jury apparently accepted the testimony for the plaintiffs, and their verdict has the approval of the trial justice. Like the jury he had an opportunity to see and hear the witnesses as they testified and it does not appear from an examination of the transcript that, in passing independently upon the verdict, he overlooked or misconceived any material evidence. In the circumstances we cannot say that his decision is clearly wrong.

The defendant finally contends that it was error to order the jury to continue deliberations when the foreman desired to report a disagreement and the illness of a lady juror. We find no specific exception in the bill of exceptions or in the transcript which embraces this subject matter. Counsel for the defendant, however, explains that he was absent when the jury thus reported and therefore had no opportunity to except. It appears that neither party was represented at that time and in argument before us both counsel stated substantially that the jury began deliberating on the case about 4 p.m. and returned about 5 p.m. to report a disagreement.

In this connection the transcript discloses the following: "The Clerk: Mr. Foreman, have you reached a verdict? The Foreman: No, sir. We disagree. The Court: Well, Mr. Foreman, before I say anything to you I want to inquire from the clerk—did counsel leave their numbers

with you? (Court and Clerk confer at bench—conversation inaudible to stenographer) The Court: Mr. Foreman, and members of the jury: If there is anything you think the Court can say to you by way of instructions, I wish you would let me know, because I do not wish to discharge you on a disagreement. Both parties in this case have gone to a great deal of trouble and expense in this case."

From this record it is not clear that counsel for defendant had asked to be excused or had left instructions with the clerk as to where he could be located. However, assuming without deciding that under his bill of exceptions he may now question the trial justice's action in refusing to accept a disagreement and in giving instructions at that time, we are of the opinion that no prejudicial error has been shown.

The court, after refusing the foreman's offer to explain further, asked if he had in mind a question of law. When he suggested it was "the question of the occupancy of the owner" the court then repeated in substance the instructions given earlier in the trial, namely, that it was necessary for the plaintiff Tucci to show that he intended in good faith personally to occupy the premises as his own housing accommodations. The trial justice further suggested that the jurors should listen to each other's arguments and see if there was any reasonable ground for agreement. He pointed out that if they disagreed another jury would be required to try and decide the case, and also stated: "I think you ought to retire and continue this case. Don't give up so readily. It is not uncommon at all to have people here until midnight or after, especially when we have only men on the jury. Go back. Continue your consideration of the case in the best possible spirit and mind, and if you can agree, come down and let me hear you."

The foreman then notified the court that one of the lady jurors was not feeling well and would rather be excused. The trial justice, after stating that he could not do this without consent of counsel, who were not present,

talked directly with the lady juror. He asked if she felt any better since she had come downstairs, and she replied: "A little—if it is not a matter of being too long. I'll do my best." To this the court stated: "Try, and see if you can do it, and if not come downstairs. (The Court to clerk) In the meantime, get counsel." And then the jury retired to the jury room.

In our opinion this record as a whole does not justify the contention of the defendant that the trial justice thereby coerced the jury into an early agreement by the threat that he would keep them until midnight if they did not agree, or that some might have been induced to agree merely to allow the juror who was ill to go home. The reference that it was not uncommon for other juries to be willing to deliberate until midnight should be read in its context. It was plainly to inform this jury, by comparison with others, that they were asking the court to accept a disagreement after a very short deliberation. As for the lady juror, he specifically gave her the opportunity to try further deliberation but to return if she felt too ill to continue. The defendant's contention that, notwithstanding the instructions, some juror might have agreed to the verdict in order to release the lady juror at an early hour is pure speculation. Such argument is unsupported by anything in the record. When the jury finally returned does not appear, but all joined in the verdict and the lady juror was asked again how she felt. Her reply was to the effect that she was able to stay and she then declined the court's offer to obtain transportation for her.

In the circumstances, when the transcript is read as a whole, we do not find prejudicial error in the refusal of the trial justice to accept the jury's proposed disagreement after such a short deliberation, or in his directions to the jury or to the lady juror to continue deliberations in accordance with his qualifying instructions.

The defendant's exception is overruled, and the case is

remitted to the superior court for entry of judgment on the verdict.

*Ralph Rotondo, Michael Addeo,* for plaintiffs.

*James J. McAleer, Harry Goldstein,* for respondent.